# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF MICHIGAN

ARTHUR GALE, DAVID ROZMAREK,
DUWAYNE FULLER, CHARLES WISNISKI,
DEBRA MAKSYM, and HARRY KOLK

       **Plaintiffs,**

v.

THE CHARTER TOWNSHIP OF FILER BOARD
OF TRUSTEES, THE CHARTER TOWNSHIP
OF FILER BOARD OF REVIEW, Municipal
Organizations, JACK BALL, AND ELIZABETH
ALLEN, in their individual and official
capacities

       **Defendants.**

_____/

CASE NO:

HON.

**PLAINTIFFS DEMAND A JURY**

Joni M. Fixel (P56712)
Attorney for Plaintiffs
Fixel & Nyeholt, PLLC
4084 Okemos Rd., Ste B
Okemos, MI 48864
(517) 332-3390
jfixel@fixellawoffices.com

_____

# COMPLAINT

NOW COMES the Plaintiffs, Arthur Gale, David Rozmarek, DuWayne Fuller, Charles

Wisniski, Debra Maksym, and Hary Kolk who, by and through their counsel, Joni M. Fixel, and in

support of this Complaint state as follows:

1

## STATEMENT OF THE CASE

The Plaintiffs to this matter are 100% service disabled veterans. Under Michigan Law, disabled veterans are entitled to relief from payment of property taxes. The Defendants, certain officials of the Township of Filer and, through them, the Township itself decided that they were more equipped to evaluate Plaintiffs' disability status than the Department of Veterans Affairs, determined that these disabled vets were not injured badly enough to justify tax relief, and *refused* to abide by Michigan law and approve the tax relief for the vets. What's worse, the same township officials have engaged in a pervasive pattern of harassment, intimidation, and public ridicule of the veterans. The Plaintiffs desire to remedy this gross and egregious violation of their rights by the Township of Filer and its officials.

## JURISDICTION AND VENUE

1. This is an action to enforce civil rights arising out of Plaintiffs' relationship with Defendants', pursuant to 42 U.S.C. 1983 for violations of their Civil Rights under the Color of State Law, Title II of the American Disabilities Act, 42 USC 12131(2), Michigan's Persons with Disabilities Civil Rights Act, MCL 37.1301, and Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2302(a)(b) and other state law claims.

2. Plaintiff Arthur Gale, a United States Citizen, resides and is domiciled in Filer Township, Manistee County, Michigan. Plaintiff Gale is a United States Veteran who served his country honorably in the Vietnam War. He was awarded the National Defense Ribbon, the Vietnam Service Medal, the Vietnam Campaign Ribbon with 3 service stars, the Expert Rifleman Badge, the 2nd Class Gunner Badge, the Good Conduct Medal, the Army Commendation Medal with a "V" device and 1 Oak Leaf Cluster, the Air Medal with 1 Oak Leaf Cluster, the Bronze Star, the

Combat Infantryman's Badge, Presidential Unit Citation, Valorous Unit Citation and the Vietnam Cross of Gallantry with Palm Leaf. Due to his service to his country, he received certain injuries that have been determined to be 100% service disabled by the United States Veteran's Administration.

3.  Plaintiff Harry Kolk, a United States citizen, resides and is domiciled in Filer Township, Manistee County, Michigan. Plaintiff Kolk is a United States Veteran who served his country honorably in World War II. Plaintiff Kolk earned a Purple Heart, the Bronze Star, a Combat Badge, Germany-Army of Occupation Medal, World War II Medal, European, African, Middle Eastern Campaign Medal and Efficiency-Honor-Fidelity Medal. Due to his service to his country, he received certain injuries that have been determined to be 100% service disabled by the United States Veteran's Administration.

4.  Plaintiff Charles Wisniski, a United States citizen, resides and is domiciled in Filer Township, Manistee County, Michigan. Plaintiff Wisniski is a United States Veteran who served his country honorably in the Vietnam War. He was discharged with honors and earned a Purple Heart and Bronze Star from the United States for his dedicated service. Due to his service to his country, he received certain injuries that have been determined to be 100% service disabled by the United States Veteran's Administration.

5.  Plaintiff DuWayne Fuller, a United States citizen, resides and is domiciled in Filer Township, Manistee County, Michigan. Plaintiff Fuller is a United States Veteran who served his country honorably in the Vietnam War. He was discharged with honors and received accommodations from the United States for his dedicated service. Due to his service to his country, he received certain injuries that have been determined to be 100% service disabled by the United States Veteran's Administration.

6.  Plaintiff Debra Maksym, a United States citizen, resides and is domiciled in Filer Township, Manistee County, Michigan. Plaintiff Maksym is a United States Veteran who served her country honorably in the First Gulf War Era. Plaintiff Maksym earned the Air Force Achievement Medal, Air Force Commendation Medal, Meritorious Service Medal with One Oak Leaf Cluster, Military Outstanding Volunteer Service Medal, Air Force Longevity Service Award with Three Oak Leaf Clusters, National Defense Service Medal, Humanitarian Service Medal, Air Force Outstanding Unit Award with Two Oak Leaf Clusters, Air Force Organizational Excellence Award, and the Air Force Good Conduct Medal with One Silver Oak Leaf Cluster. Due to her service to her country, she received certain injuries that have been determined to be 100% service disabled by the United States Veteran's Administration.

7.  Plaintiff David Rozmarek, a United States citizen, resides and is domiciled in Filer Township, Manistee County, Michigan. Plaintiff Rozmarek is a United States Veteran who served his country honorably in the Vietnam War. He was awarded the combat infantry badge, a purple heart, a bronze star with one oak leaf, the army commendation medal with V device for Valor with two oak leaves, Vietnam gallantry cross with Palm, Vietnam campaign medal with three battle stars, plus a few other medals common to service for his dedicated service. Due to his service to his country, he received certain injuries that have been determined to be 100% service disabled by the United States Veteran's Administration.

8.  Defendant Charter Township of Filer Board of Trustees is a municipality within the State of Michigan. The Defendant Charter Township of Filer Board of Trustees were the ultimate decision makers for the events within this complaint.

9.  Defendant Charter Township of Filer Board of Review is an arm of the Municipality of The Charter Township of Filer, which is located within the State of Michigan.

4

10. Defendant Jack Ball, a United States citizen, resides and is domiciled in Filer Township, Manistee County, Michigan. During all times of this complaint Defendant Ball was a Filer Township Board of Review Member.

11. Defendant Elizabeth Allen, a United States citizen, resides and is domiciled in Filer Township, Manistee County, Michigan. During all times of this complaint Defendant Allen was a Filer Township Board of Review Member and the Secretary of the Board of Review.

12. All events related to this complaint took place in Manistee County, Michigan, making venue appropriate in the United States District Court for the Western District of Michigan.

13. Jurisdiction is appropriate pursuant to 28 USC 1331 for Federal Question under 42 U.S.C. 1983 and 42 U.S.C. 12131(2).

14. The United States District Court may take supplemental jurisdiction over the State law claims pursuant to 28 U.S.C. §1367.

## ALLEGATIONS

Plaintiffs incorporate by reference the factual statements and legal assertions contained in the previous numbered paragraphs as if fully restated herein.

15. Defendant Charter Township of Filer Board of Trustees and Defendant Charter Township of Filer Board of Review are authorized by the State of Michigan to perform a wide variety of functions. Some functions are mandated and required such as assessment administration, elections administration and tax collection. These duties are legally assigned functions of the supervisor, clerk and treasurer, respectively. Beyond the mandated functions, Michigan townships are authorized to provide a wide variety of services that are generally purpose governmental entities.

16. The State of Michigan has passed Public Act 161 of 2013, also known as the Dannie Lee Barnes Disabled Veteran Property Tax Relief Act (**Exhibit A**). Pursuant to Public Act 161 of 2013, any

5

honorably discharged disabled veteran can apply to be exempt from the payment of property

taxes if the veteran meets certain criteria. An affidavit must be filed by the veteran seeking

exemption with the real property description. The affidavit when filed shall be open to

inspection. The definition of a "disabled veteran" is as follows:

> As used in this section, "disabled veteran" means a person who is a resident of this state and **who meets one of the following** criteria [emphasis added]:
>
> (a) Has been determined by the United States Department of Veterans' Affairs to be permanently and totally disabled as a result of military service and entitled to veterans' benefits at the 100% rate.
>
> (b) Has a certificate from the United States Veterans' Administration, or its successors, certifying that he or she is receiving or has received pecuniary assistance due to disability for specially adapted housing.
>
> (c) Has been rated by the United States Department of Veterans' Affairs as individually unemployable. [1]

17. Each of the Plaintiffs in this case properly applied for the property tax exemption according to the procedure and the laws as stated in Public Act 161 of 2013.

18. The Defendants, Charter Township of Filer and Charter Township of Filer Board of Review officials denied the applications for exemptions/waivers. Defendants, Charter Township of Filer and Charter Township of Filer Board of Review not only denied the applications, but went on a personal campaign of investigation and public comments which caused humiliation and embarrassment, exacerbating the disabilities of these disabled veterans.

19. Public Act 161 of 2013 requires that only one of the three criteria be verified by the U.S. Department of Veterans Affairs ("VA") to qualify for the exemption. **(See Exhibit A)**

---

[1] Public Act 161 of 2013, MCL 211.7b (3)

20. All Plaintiffs were (and still are) 100% service disabled at the time of application.

21. In February 2014, the Defendants Charter Township Board of Review attended a class to learn how to properly process the applications for Property Tax Exemptions/waivers pursuant to Public Act 161 of 2013.

22. On February 19, 2014, Defendant's Ball and Allen were nominated and elected for the Defendant Board of Review.  **(See Exhibit B)**

23. Each of the Plaintiffs provided proof to the Defendants that they satisfied at least one of the required criteria under Public Act 161 for a property tax exemption, including their disabled veteran status.

24. On or about March 19th – March 20, 2014, despite providing the required information for the Property Tax exemption, all Plaintiffs were denied the property tax exemption by the Defendant Charter Township of Filer Board of Review.

25. Plaintiffs complained about the injustice and improper denial to Charter Township of Filer but their complaints fell on deaf ears.  A video recording depicting this hearing is available online.[2]

26. Defendant Charter Township of Filer Board of Review sent Plaintiff Wisniski a letter stating that they were questioning whether he qualified for the exemption because he had worked for years and retired from a plant, so he did not qualify as disabled or unemployable.

27. Defendant Allen publically stated that *"If they've been able to work for years and years and retired from a plant in Manistee and if you can golf and bowl on two leagues and run around Manistee Lake and brag about it and held down a full time job with benefits for years, you are not 100 percent disabled and you can pay your property tax."* **(See Exhibit C- page 2)**

---

[2] https://www.youtube.com/watch?v=xTjn6EMB_q4&feature=player_embedded

28. Defendant Allen's statements failed to consider the possibility that persons could be considered 100 percent service disabled by reason of combat related *mental* disabilities, such as Post Traumatic Stress Disorder (PTSD).

29. Defendant Allen and other members of the Defendant Filer Board of Review decided that they had the authority to determine whether someone was disabled based upon personal opinion, instead of following the plain language of Public Act 161 of 2013.

30. Defendant Allen went further, stating *"If you want to know what 100 percent disability looks like, look at the Wounded Warrior Project"* and *"I believe we should pay the property taxes for those poor military veterans."* **(See Exhibit C- page 3)**

31. The United States Veterans who benefit from the Wounded Warriors Project are those that served in the armed forces from 2001 through present day.

32. Defendant Allen, by and through her statements, shows a clear preference to *younger disabled veterans* to the exclusion of the U.S. Veterans who received service disabilities prior to 2001.

33. Defendant Allen, by and through her statements, has also shown a clear preference to *physically injured* veterans, such as those who benefit from the Wounded Warrior Program.

34. On May 6, 2014, at the Defendant Charter Township Meeting, several comments were made about recalling the Defendant Board of Review members. **(See Exhibit D)**

35. Plaintiffs were told that if they didn't like the decision they could appeal it to the Michigan Tax Tribunal.

36. Plaintiffs sent a letter to the Michigan Tax Commission requesting clarification of the actions taken by the Defendants.

37. On May 27, 2014, Michigan Tax Commission issued an order that admonished the Defendants for *"....their insensitive remarks, inappropriate actions and illegal denial of these exemptions...."* **(See Exhibit E–pg 2)**

8

38. On May 27, 2014, Plaintiffs were sent a letter by the Michigan Department of Treasury adopting the orders of the Michigan Tax Commission. **(See Exhibit F)**

39. On August 29, 2014, the Michigan Tax Tribunal reversed the Orders of the Michigan Tax Commission for lack of Jurisdiction. The Tax Tribunal reiterated the requirements for qualifying for the Disabled Veterans Exemption and advised the Plaintiffs that they had to appeal through the Tax Tribunal which would proceed with a hearing. **(See Exhibit G)**

40. Plaintiffs were required to provide additional information and were placed under undue stress by having to file the next level of appeal needlessly.

41. After the denials of the Property Tax Exemption, several of the Plaintiffs have observed their daily activities being monitored by various individuals acting on behalf of the Defendants sitting in a car on a street by or near the Plaintiffs homes.

42. At least two of the Plaintiffs were required to appeal to the Michigan Tax Tribunal to have the decision overturned. Plaintiffs all eventually were granted the exemptions/waivers, but not without additional stress and paperwork that never should have been required.

43. Many of the Plaintiffs' disabilities are related to PTSD from their service to their country. Stress and emotional issues continue to be a lifetime battle.

44. The additional stress from the wrongful, malicious, and unlawful actions of the Defendants has caused both additional emotional and physical damages to the Plaintiffs.

45. Plaintiffs were already publically humiliated by the Charter Township of Filer Board of Review, and now had to endure being spied on by the Defendants.

46. Plaintiff Fuller observed his home being monitored by a dark SUV in July and August of 2014. When he approached the car to confront the person, the car sped off at a great rate of speed.

47. Plaintiff Fuller knows of his home and activities being monitored at least five times in the summer of 2014.

48. Plaintiff Fuller was told by two of his neighbors that Defendant Ball had been questioning them about his activities, and was discussing the complaints that the Plaintiffs were making about being denied the property tax exemptions/waivers.

49. Plaintiff Gale observed a dark SUV sitting next to his home in the summer of 2014. When he approached the car, it immediately sped off and out of the neighborhood.

50. Plaintiff Gale attended a Filer Township Board meeting in June 2014. Defendant Allen sat behind him and said loudly to a person sitting next to her *"[h]e didn't deserve the waiver because he would only get drunk and crash his car"*.

51. Defendant Allen and her friend then looked directly at Plaintiff Gale and grinned after making the statement. It was clear that Defendant Allen was referring to Plaintiff Gale when she made the statement above.

52. In summer of 2014, many people in the community approached Plaintiff Gale to inquire about his service disabilities.

53. Plaintiffs would never have had their service disabilities become an issue to the public if Defendants' had done their job properly and granted the property tax exemption/waiver.

54. Plaintiffs were, and continue to be, traumatized by the actions of the Charter Township of Filer Board of Review and their actions.

55. Defendants knowingly and blatantly denied the Plaintiffs' exemptions/waivers based on personal discriminatory animus.

56. Defendants knowingly and blatantly monitored the Plaintiffs daily activities with no authority or justification, causing the Plaintiffs considerable emotional stress and anxiety.

57. Defendant Allen had no authority to go outside of her official capacity and scope of her duties and use personal discriminatory opinions and practices to deny the Plaintiffs the Property Exemption that they were legally entitled to receive.

10

58. Defendant Ball had no authority to go outside of his official capacity and scope of his duties and use personal discriminatory opinions and practices to deny the Plaintiffs the Property Exemption that they were legally entitled to receive.

59. Defendants Ball and Allen had no authority to investigate the Plaintiff's daily activities or to question the neighbors of the Plaintiffs to discuss their activities or their service connected disabilities.

60. Defendant Charter Township of Filer were advised by Plaintiffs several times that they were being discriminated against by the Defendant Charter Township of Filer Board of Review and did nothing to investigate.

61. The State of Michigan sent the Defendant Charter Township of Filer at least one letter advising this Defendant that the denial of the Plaintiff's exemptions/waivers were wrong. Defendant Charter Township of Filer did nothing to correct the actions of the Defendant Charter Township of Filer Board of Review's actions.

62. In fact, in a sign of ratification of the improper actions of the Defendants, Charter Township of Filer Board of Review, Ball and Allen, the Defendant Charter Township of Filer voted unanimously to reappoint Defendant's Ball and Allen to the Board of Review.

63. Defendants were grossly negligent in their treatment of the Plaintiffs in their denials, the public statements and the monitoring of the Plaintiffs private lives.

64. Plaintiffs have endured both physical and emotional damages due to the Defendant's actions. These damages include increased panic attacks, sleepless nights, flashbacks, increased medication, and aggravation of stress induced diabetes, increased psychological problems requiring treatment by professionals, increased and aggravated symptoms from the service related disabilities that the Plaintiffs already endure.

### COUNT ONE: SUBSTANTIVE DUE PROCESS - EQUAL PROTECTION VIOLATION – 42 USC § 1983 AGAINST DEFENDANT CHARTER TOWNSHIP OF FILER BOARD OF REVIEW AND INDIVIDUAL DEFENDANTS ALLEN AND BALL

Plaintiff incorporates by reference the factual statements and legal assertions contained in the previous numbered paragraphs as if fully restated herein.

65. The fourteenth amendment guarantees every person within the United States the right to equal protection of the laws and equal privileges and immunities under the law. When a state distributes benefits unequally, the distinctions it makes are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment. Generally, a law will survive that scrutiny if the distinction rationally furthers a legitimate state purpose. The equal protection clause applies to the activities of governmental agencies, and protects persons from irrational discrimination in either acts of commission or omission.[3] Generally, a law will survive that scrutiny if the distinction rationally furthers a legitimate state purpose.

66. Plaintiffs' constitutionally protected rights that Defendants violated include the following:

   a. Their right to not have a property interest, their right to property tax relief, taken away without just cause; as protected in the Due Process Clause of the Fourteenth Amendment;

   b. Their right to appeal as protected in the Due Process Clause of the Fourteenth Amendment; and

   c. Their right to fair and equal treatment guaranteed and protected by the Equal Protection Clause of the Fourteenth Amendment.

---

[3] *Hooper v. Bernallilo County Assessor,* 472 U.S. 612 (1985).

67. The Defendants, acting under color of state law, had an affirmative duty as officers of the state to apply the plain meaning of Public Act 161 in an equal and just manner, giving rise to affirmative duties on their part to secure for the Plaintiffs their constitutionally protected rights as identified above.

68. The Defendants violated their duties as state officers through allowing their personal animus against the Plaintiffs' to interfere with the Plaintiffs' rights, their subsequent interventions in requiring the Plaintiffs' to appeal to the Michigan Tax Board, and in the following attempts to discredit and harass the Plaintiffs through their campaign of observation. The above actions are the direct and proximate cause of the subsequent deprivation of the Plaintiffs' constitutional rights.

69. The plaintiffs are members of a common class of persons: veterans who are 100% service disabled and entitled to property tax relief by Michigan law.  The defendants, and each of them, unlawfully and arbitrarily denied Plaintiffs' right to property tax relief based on improper and arbitrary discrimination between such persons whose disabilities are *emotional,* related to PTSD, as opposed to *physical,* like the persons involved in the Wounded Warrior project.  In so doing, the Defendants, and each of them, violated Plaintiffs' right to equal protection of the laws.

70. Plaintiffs had a property right to the tax relief indicated herein.  Defendants arbitrarily and capriciously, under color of state law, deprived the Plaintiffs of this property right contrary to their rights to due process.

71. Defendants had no rational basis for the denial of the services from the Plaintiffs nor was there any legitimate state interest in the reasons stated for the denials.

72. The Defendants, acting under color of state law and in concert with one another, by their conduct have shown intentional, outrageous, and reckless disregard for Plaintiffs' constitutional rights.

73. Further, their actions in arbitrarily denying the Plaintiffs access to their rights under Public Act 161 based upon their personal opinions rather than relying on the plain language of the Act; in their treatment of the Plaintiffs in their denials; in the public statements made by Defendant Allen; and the monitoring of the Plaintiffs private lives showed intentional, reckless disregard to the Plaintiffs' veteran status and disability needs, and was a deprivation of their constitutionally protected rights.

74. As a direct and proximate result of Defendants' conduct, the Plaintiffs have suffered public humiliation, anxiety, stress and physical damages, and the deprivation of their constitutionally protected rights as described above.

75. The Defendants, acting under color of state law, authorized, tolerated, ratified, permitted, or acquiesced in the creation of policies, practices, and customs, establishing a de facto policy of harassment and deliberate interference toward individuals such as the Plaintiffs on the basis of their age, veteran's status, and disabilities.

76. As a direct and proximate result of these policies, practices, and customs, the Plaintiffs were deprived of their constitutionally protected rights as described above.

77. Because the Defendants were high ranking officials, and ultimate decision makers in the Township of Filer, the Township itself may be held liable for the individual defendants' active violations of Plaintiffs' rights pursuant to Section 1983.

78. Because the Defendants' actions demonstrate a pattern, practice, and policy of the Township of Filer towards wrongful denial of rights to property and equal protection, the Township of Filer may be held liable for the individual defendants' violations delineated herein.

## COUNT TWO:  VIOLATIONS OF TITLE II OF THE AMERICANS

## WITH DISABILITIES ACT - 42 USC 12131(2)

Plaintiffs incorporate by reference the factual statements and legal assertions contained in the previous numbered paragraphs as if fully restated herein.

79. The Defendants meet the definition of "public entity" as stated in 42 USC 12131(1).

80. The Plaintiffs are all defined as being "disabled individuals" within meaning of the ADA, 42 USC 12102 *et seq.*

81. The Plaintiffs are all defined as being "qualified individuals" within meaning of the ADA, 42 USC 12131(2).

82. Despite the fact that they are qualified individuals, the Plaintiffs were being denied the benefits of Public Act 161 of 2013 because of their disabilities.

83. Defendants wrongfully denied the Plaintiffs public services on the basis of their disabilities in violation of Title II of the Americans with Disabilities Act by relying on their opinions that the Plaintiffs were not disabled, rather than the plain meaning of Public Act 161.

84. Section 35.102 of the ADA prohibits discrimination on the basis of handicap in Federally assisted programs and activities, including those programs and activities of public entities that receive Federal financial assistance. Title II of the ADA extended this prohibition of discrimination to include all programs, and activities provided or made available by State or local governments or any of their instrumentalities or agencies, regardless of the receipt of Federal financial assistance.

85. As a result of the actions of the Defendants in preventing the Plaintiffs from benefitting from Public Act 161 on the basis of their disabilities, they have suffered needless public humiliation, and emotional, stress and physical damages.

## COUNT THREE: GROSS NEGLIGENCE AS TO DEFENDANTS

## ALLEN AND BALL

Plaintiff incorporates by reference the factual statements and legal assertions contained in the previous numbered paragraphs as if fully restated herein.

86. Defendants Ball and Allen had a duty to the Plaintiffs to execute the duties of their offices as required by state law, and to properly review the exemptions/waivers sought and apply them as instructed by the clearly worded Public Act 161.

87. Defendants Ball and Allen could not have honestly believed that making discriminatory statements, discriminating against the Plaintiffs, questioning the neighbors of the Plaintiffs, or monitoring the Plaintiffs activities was performing a governmental function and part of the duties of their offices.

88. Defendants Ball and Allen were NOT engaged in the exercise and discharge of a governmental function when they discriminated against and monitored the activities of the Plaintiffs.

89. The Defendants had a duty to the Plaintiffs to execute the duties of their offices as required by state law, and to not discriminate due to the age of the Plaintiffs.

90. The Defendants had a duty to the Plaintiffs to execute the duties of their offices as required by state law and not to monitor the Plaintiffs activities in their personal lives at home to try to prove the Plaintiffs.

91. The Defendants had a duty to the Plaintiffs to execute the duties of their offices as required by state law not to make untrue statements in an attempt to publically humiliate the Plaintiffs.

92. The Defendants knowingly and with malicious intent breached that duty by abusing their positions to indulge in discriminatory opinions and practices, and by illegally monitoring the Plaintiffs activities at their home to try to support their discriminatory opinions that the Plaintiffs were not disabled.

16

93. Defendants Allen and Ball simply did not care about the results or the damages that they were causing the Plaintiffs by their improper actions.

94. As a direct result of the actions of the Defendants Allen and Ball, the Plaintiffs have suffered needless emotional stress, anxiety and physical damages.

## COUNT FOUR: VIOLATIONS OF MICHIGAN'S PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, MCL 37.1301

Plaintiff incorporates by reference the factual statements and legal assertions contained in the previous numbered paragraphs as if fully restated herein.

95. The Plaintiffs are "Person(s) with a disability(s)' as defined by MCL 37.1103(h).

96. The Defendants are a "public service" as defined by MCL 37.1301(b).

97. The Plaintiffs' disabilities are unrelated to their ability to utilize the services of the Defendant in regards to the tax exemptions/waivers offered through Public Act 161 of 2013.

98. The Defendants actions prevented the Plaintiffs from taking advantage of the offered tax exemptions/waivers made available to them through Public Act 161, as well as letting it be known in a public forum that their tax exceptions will be denied to disabled individuals if they do not conform to what preconceived discriminatory notions of "disability" that the Defendants hold.

99. The Defendants denials of the exemptions/waivers through refusing to recognize the Plaintiffs disabilities was a denial of public service in violation of Michigan's Person's with Disabilities Civil Rights Act.

100. As a result of the actions of the Defendants, the Plaintiffs have suffered public humiliation, and emotional stress, anxiety and physical damages.

17

## COUNT FIVE: VIOLATIONS OF MICHIGAN'S ELLIOT-

## LARSEN CIVIL RIGHTS ACT (ELCRA), MCL 37.2302(A)(B).

Plaintiff incorporates by reference the factual statements and legal assertions contained in the

previous numbered paragraphs as if fully restated herein.

101.   The Defendants constitute a "public service" as defined by MCL 37.MCL 37.2103(b).

102.   The Plaintiffs were all denied public services by the Defendants based in part on their ages.

103.   Pursuant to the ELCRA, Plaintiffs are part of a protected class based on their ages.

104.   The Plaintiffs are all Veterans of United States military actions taken prior to 2001.

105.   The Plaintiffs were denied benefits because they were not physically disabled Veterans who had

served from 2001 to present, which would make them part of the Wounded Warriors.

106.   The Plaintiffs were denied their tax exemptions/waivers through Public Act 161 of 2013

because of the preferential treatment exhibited toward younger veterans who have served from

2001 and on by the Defendants.

107.   The Defendants through Defendant Ball publically stating that the older veterans were not

worthy of the property tax exemption/waiver and the subsequent denial of the

exemption/waiver violated the Elliot-Larsen Civil Rights act by discriminating against older

United States veterans.

108.   The Defendants discriminated against the Plaintiffs by treating the older Veterans differently

than the younger Veterans.

109.   The Defendants also acted beyond the scope of their positions to engage in a campaign of

harassment against the Plaintiffs based upon their discriminatory behavior by placing the

Plaintiffs under surveillance to disprove the disabilities of the Veterans.

110.   Defendants have discriminated against the Plaintiffs based on the ages of the Veterans, the

disabilities possessed by them, and when they served their country.

111. As a result of the actions of the Defendants, the Plaintiffs have suffered public humiliation, emotional stress, anxiety, and physical damages.

## COUNT SIX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff incorporates by reference the factual statements and legal assertions contained in the previous numbered paragraphs as if fully restated herein.

112. During the times described above, the Defendants knowingly and maliciously engaged in depriving the Plaintiffs of their property tax exemptions/waivers, their appeals, and their peace of mind by engaging in a campaign of discrimination and harassment based upon their personal animus toward the Plaintiffs.

113. This conduct, which was undertaken using the Defendants' positions as officials of the Charter Township of Filer and the Charter Township of Filer Board of Review, was extreme and outrageous in that it grossly exceeded the scope of their state-given authority, and resulted in greatly compromising the rights of the Plaintiffs.

114. The Defendants knowingly and maliciously spied on the Plaintiffs, questioned the neighbors of the Plaintiffs, made public statements denigrating the Plaintiffs' service related disabilities, and went on a campaign to discredit the Plaintiffs.

115. As a result of the Defendant's actions, the Plaintiffs have suffered severe emotional distress, public humiliation, anxiety, and physical damages.

19

## COUNT SEVEN: EXEMPLARY DAMAGE CLAIM

Plaintiff incorporates by reference the factual statements and legal assertions contained in the previous numbered paragraphs as if fully restated herein.

116. Defendants, by and through the actions of Defendants Allen and Ball, intentionally and maliciously denied the Plaintiffs for no purpose except to harass the Plaintiffs.

117. Defendants actions by denying public services, making the Plaintiffs disabled status public, questioning neighbors about the Plaintiffs, and monitoring the Plaintiffs activities, were malicious and willful and wanton in clear disregard to the rights of the Plaintiffs.

118. Plaintiffs are entitled to Exemplary Damages for the public humiliation, emotional stress, increased anxiety and physical damages caused by the willful and wanton actions of the Defendants.


## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request that this Honorable Court:

A. Find that the Defendants have acted with gross negligence in their treatment of the Plaintiffs;

B. Find that the Defendants have violated the Plaintiffs civil rights through the color of State law;

C. Find that the Defendants have violated the Plaintiffs rights of public services in violation of the Americans with Disabilities Act;

D. Find that the Defendants have violated the Plaintiffs civil rights as disabled persons in violation of Michigan's Persons with Disabilities Civil Rights Act;

E. Find that the Defendants have violated the Plaintiffs civil rights and discriminated against the Plaintiffs in violation of Michigan's Elliott-Larsen Civil Rights Act;

F. Grant Plaintiffs an award for emotional damages for the continued turmoil Defendants have caused due to this situation;

20

G.  Grant Plaintiffs exemplary damages as found appropriate by this Honorable Court, and

H.  Grant Plaintiffs an award of reasonable attorney's fees for prosecuting this action, and

I.  Grant Plaintiffs any other relief, in law or equity, which the Court should deem appropriate

given the circumstances described herein.

Respectfully Submitted,

_____                Dated:  _2-20-15_____

Joni M. Fixel (P56712)
Attorney for Plaintiffs
Fixel & Nyeholt, PLLC
4084 Okemos Rd., Ste B
Okemos, MI 48864
(517) 332-3390
jfixel@fixellawoffices.com